MCKENZIE *v.* DETROIT, JACKSON & CHICAGO RAILWAY CO.

1. APPEAL AND ERROR—TRIAL—CONDUCT OF COUNSEL—PREJUDICIAL ERROR.

  Constant interruptions and comments by counsel for defendant railway corporation, in a suit for personal injuries, annoying and otherwise unfair, and which are obviously improper, though as likely to be as unfavorable to defendant as to plaintiff, will not be held to be prejudicial, in the absence of any particular ruling or failure to rule which can be said to constitute reversible error.

2. TRIAL—EVIDENCE.

  *Held*, no material testimony relating to the main issue was improperly excluded or admitted.

3. SAME—REQUESTS TO CHARGE CONTRARY TO CASE—INSTRUCTIONS.

  Plaintiff's request to charge, embodying a plain implication contrary to his case, was properly refused.

4. CARRIERS—RELATION OF PASSENGER.

  Where plaintiff boarded defendant's interurban car after it was in motion, it was not necessary for him to be recognized by defendant's agent before becoming a passenger.

5. TRIAL—CARRIERS—PASSENGER—BOARDING CAR—INSTRUCTIONS —
DIRECTED VERDICT.

   It was reversible error for the court to submit to the
jury the question as to whether plaintiff exercised a
proper degree of care in boarding defendant's car, where
plaintiff's testimony that he was safely standing upon
the platform before being thrown therefrom by the claimed
negligence of defendant was undisputed, there being no
testimony supporting defendant's theory that plaintiff was
thrown while attempting to board it.

Error to Washtenaw; Kinne, J. Submitted January
10, 1917. (Docket No. 85.) Decided March 29, 1917.

Case by Walter I. McKenzie against the Detroit,
Jackson & Chicago Railway Company for personal in-
juries. Judgment for defendant. Plaintiff brings er-
ror. Reversed.

*Arthur Brown,* for appellant.

*Cavanaugh & Burke,* for appellee.

OSTRANDER, J. At about 8:30 o'clock on the evening
of October 23, 1914, defendant's interurban car left
the station at Ypsilanti for Ann Arbor. Plaintiff,
appellant, desired to ride to Ann Arbor. It is his
contention, supported by testimony, that after the car
began to move from the stopping place at the station
and had proceeded 10 or 15 feet he caught and boarded
it, suitcase in hand, and established himself upon the
rear platform of the car, which he was prevented from
leaving conveniently and taking a place inside the car
as he proposed to do because of the presence of other
passengers on the platform and in the aisle of the car.
After the car had carried him from 325 to 350 feet,
it turned from a switch, or turnout track, onto the
single track, and in doing so, because of the speed at
which it was moved, he was, by the lurching of the
car, thrown from the platform to the ground and in-

jured. In the opinion of plaintiff and his witness, the car was running 25 miles an hour when it left the switch. The conductor of the car estimated its speed, at this point, at 10 miles an hour, saying also that a rate of from 10 to 12 miles an hour was regarded as safe movement in such a place. Whether the relation of carrier and passenger existed when plaintiff was thrown or fell from the car, whether the agents of defendant negligently operated the car, whether if plaintiff was a passenger he was guilty of negligence contributing to his injury, seem to be the questions which were considered at the trial. The jury returned a verdict for defendant, upon which a judgment for defendant was entered. A new trial was asked for by plaintiff, and was refused.

A considerable number of exceptions were taken, and the assignments of error number 42. In the brief for appellant it is said that the errors upon which appellant relies may be for convenience grouped as follows:

(1) Those pertaining to the exclusion of plaintiff's testimony.

(2) Those pertaining to admission of defendant's testimony despite plaintiff's objections.

(3) Those pertaining to the interruptions, statements, comments, and interferences of defendant's counsel, and the refusal of the court to interfere and prevent the same.

(4) Those pertaining to comments of the court, in the presence and hearing of the jury, prejudicial to plaintiff.

(5) Those pertaining to the court's refusal to give plaintiff's first request to charge and to the court's instructions to the jury on its own motion.

(6) That pertaining to the denial of plaintiff's motion for a new trial.

Under each of these headings are references by number to assignments of error, 11 such being given under the first heading, with a reference in each case

to a page of the record.  There is no statement, dis-
tinct from argument, of the questions involved or of
the manner in which they are raised.  Under the head-
ing "Argument" is a statement of appellant's claims
with the assertion that they "were conclusively estab-
lished by the proof, and appeals to the record and the
authorities for confirmation of his assertion."  There
follows a discussion of these claims, the propositions
being:

(1) The relation of passenger and carrier existed
between the appellant and appellee when appellant re-
ceived his injuries.

(2) Appellee was guilty of negligence as charged
in the declaration.

(3) Appellant was free from fault or negligence
causing or contributing to the injury sustained by
him.

(4) Appellant sustained serious injuries, concern-
ing which the only issue was whether they were likely
to be permanent.

To this point in the discussion there is no reference
to any assignment of error.  Counsel for plaintiff did
not ask for a directed verdict upon any of these points.
It was not claimed at the trial that any of those issues
should be withdrawn from the jury.  It is not claimed
in the brief that it was error to submit any of them
to the jury, nor is any reference made to any alleged
erroneous ruling of the court.  The conclusion stated
is:

"We submit that under the record it was impossible
for the jury to find no cause of action; that it would
not have so found had not the minds of the jurors
been diverted from the issue, had not the jurors been
misled and misdirected.  Appellant's complaint in this
regard is embodied in part in assignments of error
Nos. 3, 4, 5, 6, 32, 33, 34, and 42, embraced in groups
3 and 6, *supra*."

Laying down the brief and referring to the index
to the record, it is found that assignments 3, 4, 5, and

6 are based upon objections found upon pages 21 and 22 of the record, assignments 32 and 33 upon page 120 "and record," and assignment 34 upon "See record." Page 120 of the record contains a portion of the motion for a new trial. Assignment 42 is based upon the order refusing a new trial. Turning to pages 21 and 22 of the record, we find a portion of the direct examination of plaintiff. Beginning at bottom of page 20, and including a part of page 22, the examination proceeds as follows until the witness was excused:

"*Q*. We want you to tell about your injuries, and not what somebody said about them.

"*A*. That was the only way I got at it; there was a fracture. I suffered a very severe bump upon the head, which caused me to lose consciousness, and to suffer very intensely for several days in the hospital, during the first six days of which period I slept practically not at all; it was impossible for them to give me any opiates to relieve my pain.

"*Mr. Cavanaugh:* I move that be stricken out.

"*A*. They did not give me any opiates that relieved my pain for several days.

"*Mr. Cavanaugh:* He has evidently changed his ideas about that.

"*Mr. Brown:* I move that be stricken out.

"*The Court:* It may be stricken.

"*A*. All that they did for me after bandaging my head and bandaging my hip, which also was cut, was to place ice caps packed with chipped ice about my head. After several days like that they gave me bromides to make me sleep. During those first few days I suffered very intensely.

"*Mr. Burke:* He had already suffered intensely three times.

"*A*. I am still suffering intensely. (Exception for plaintiff.)

"*Mr. Burke:* There is no use of repeating it unless he wishes to make an impression on the jury.

"*Mr. Brown:* I object to that statement, and ask to have it stricken out.

"*The Court:* I think you may go on. (Exception for plaintiff.)

"*A.* During this period I was out of my head at times.

"*Mr. Cavanaugh:* There is no allegation in the declaration that he was ever out of his head, and I move that be stricken out.

"*Mr. Brown:*   The allegations in the declaration are sufficient to cover it, if they are not, after we get all through the testimony we may ask, under the broad terms of the new act, to amend it.

"*Mr. Burke:* We object to any amendment at this time; they have had two years to think over about that intense pain.

"*The Court:* The judicature act seems to take care of it.  Go on Mr. Brown.

"*Mr. Brown:* I move the statement of counsel be stricken out.   (Exception for the plaintiff.)

"*Mr. Burke:* There is no allegation covering that. It says that he was greatly shocked.

"*Mr. Bunker:* That is sufficient; we do not have to allege it.

"*Mr. Cavanaugh:* We will allow you to look the matter up.

"*Mr. Brown:* I ask to have that stricken out.

"*The Court:* I think I will reserve that until after the recess.   (Exception for plaintiff.)"

The brief then proceeds to refer to matter upon pages 104, 17, 27, 29, 31, 72, 81, 106, of the record, but we find no assignment of error based upon any objections there appearing.  As to matter appearing upon pages 46, 53, 64, 82, and 83, and other pages, and the objections there made, they have been examined.  In a general way, it may be said that these objections are all of them addressed to interruptions and comments by counsel for defendant, no doubt annoying, and some of them appearing to have been otherwise unfair.  What is above set out is an example of repeated instances of interruption and comment.  In a general way, the complaint which is made is also of want of decorum at the trial, and is a criticism of the manner in which, without rebuke, interruptions and comments by counsel were permitted.  The complaint

is summed up in the following statement taken from the brief of appellant:

"We have set out a part of the record for the convenient examination of matters of which appellant complains. We have drawn attention to them specifically in the hope that we may persuade this court what we failed to persuade the lower court, that appellant should have a new trial for those reasons alone which are set out as the sixth and seventh grounds of the motion, namely: (6) Because throughout the trial defendant's counsel improperly interrupted the orderly proceedings of the trial, and made unwarranted statements and comments prejudicial to plaintiff's cause. (7) Because the court was in error in refusing to interfere to prevent such interruptions, statements, and comments. The trial court's answer to these is this: 'As to the sixth and seventh causes assigned, I am not aware of the existence of the causes so assigned.' The motion was based upon the testimony as well as on the records and files."

Detailed discussion of these assignments of error will not be undertaken. Most of the objectionable comment occurred while proof of the damages sustained by plaintiff was being introduced. Whatever may be said about the impropriety of the conduct of counsel complained of, and the want of proper decorum manifested, it is not certain that they resulted in prejudice to the plaintiff. It is quite as likely that such conduct upon the part of counsel for a corporation defendant produces in the minds of jurymen an opinion or a feeling unfavorable to the defendant. Upon this subject, the brief of counsel for appellant does not aid the court in placing its finger upon any particular conduct, ruling, or failure to rule which can be said to constitute reversible error. Indeed, it is rather assumed, as the argument referred to indicates, that the court may conclude that from the strength of plaintiff's case, and the verdict returned, the jury was affected, unfavorably to plaintiff, by the

conduct of counsel and the failure of the trial court to rebuke it. The impropriety of much that occurred and is complained about is obvious. That it prejudicially affected plaintiff is not obvious.

I do not find that any material testimony relating to the main issue to which attention is directed was improperly excluded or improperly admitted. If reversible error appears, it must be in the charge of the court or in refusals to charge.

All of plaintiff's requests, excepting the first, were given. The first is not a request for any rule, but is a statement of plaintiff's claim. Refusal to give it is assigned as error. It is as follows:

"It is the claim of the plaintiff that on October 23, 1914, he became a passenger upon one of the local cars of the defendant to be carried as such passenger from the waiting room in the city of Ypsilanti to the city of Ann Arbor, for certain fare that he was then and there prepared to pay and intended to pay, for such passage. That as he was about to leave the walk in front of the station of the defendant company at Ypsilanti, and pass from the walk to the pavement lying between the curb of the walk and the car of the defendant standing about 10 feet from the curb of the walk, and that before he had an opportunity to go upon the car, the car started and he was obliged to quicken his pace and run a short distance to board said car; that when he got upon the car, it was moving slowly away from the station, and he then passed up the steps of said car, and onto the platform, in order to pass into the car and be carried as such passenger over said journey; that several people were standing in front of the door of the car upon the platform, waiting to go into the car, their passage into the car and the passage of plaintiff into the car being obstructed by a number of people standing in the aisle of the car, up to the doorway and out onto the platform ahead of the plaintiff, and that the car increased its rate of speed very rapidly after plaintiff got on the platform, so that when said car struck the switch

at or near the intersection of Pearl street in the city of Ypsilanti, it caused said car to lurch or suddenly sway first one way and then the other, so that plaintiff was thrown off his balance, first to the right, and then to the left, and that the lurch of said car to the left caused plaintiff to be thrown therefrom, and to strike violently upon his head and shoulder on the street about 50 feet north of the north line of Pearl street, and that by reason of said fall said plaintiff sustained the injuries complained of in this case."

It was not error to refuse it because it contains the plain implication, not a part of plaintiff's contention, that he was refused, or denied, opportunity to go upon the car. So far as defendant is concerned, it afforded opportunity to go upon the car while it was standing at the station. Admittedly, the plaintiff was not there to embrace the opportunity. He presented himself after the car was in motion.

The court stated the claims of the parties, saying:

"The plaintiff claims that while on the car of the defendant company that left Ypsilanti on the evening of October 23, 1914, the defendant recklessly and while going at a high rate of speed left the switch and entered upon the straight track, and that in doing so carelessly and recklessly threw him from the car and produced certain injuries which he has named to you, and for which he claims that the defendant is liable in this action.

"The defendant claims that the car was going at the time at a moderate and usual rate of speed at that place, and not going faster than was his rule and custom at that place; that the conductor was not aware that the plaintiff was aboard the car until he saw that the plaintiff was being hurled from the back platform of said car, and defendant denies that it was negligent in any respect for the injuries to the plaintiff.

"I think that is a complete statement of the case."

It was not in fact a complete statement of the case, although none of the counsel asked for a correction or for a further statement. It appeared—was admit-

ted—that plaintiff had boarded the car after it was in motion. Defendant's counsel had taken the position that there was at least doubt whether plaintiff was in fact fairly upon the car before he was thrown or fell from it and the legal position, if some of the testimony was believed, and some disbelieved, that he was not a passenger. Plaintiff's own request, which was given, left to the jury the duty of finding that plaintiff was a passenger upon this car. It began:

"If you find from the evidence that the plaintiff was a passenger upon defendant's car which left Ypsilanti for Ann Arbor," etc.

Apparently it was the contention of defendant which induced the court to say, what is complained about, that:

"It may be said that inasmuch as the car of the defendant had started before the plaintiff attempted to take his passage thereon, that this fact in itself would preclude the right of the plaintiff to recover in this action. That is not necessarily so, for if the subsequent negligence of the defendant company caused this injury (and such negligence in thus taking the car), then the plaintiff would not thereby be precluded from his right to recover, and if such subsequent negligence caused the injuries to the plaintiff and he was free from fault, then the plaintiff is entitled to recover in this action."

The words which I have put in parenthesis have no meaning. The excerpt from the record except the parenthetical marks is as the record is printed. It should probably be read with the indicated words omitted.

And again, in the course of the charge, to say:

"The boarding of a moving car even if negligence in itself does not constitute contributory negligence as a matter of law so as to prevent recovery, where the danger attending the act had passed before an injury was sustained. If you find from the evidence that the

direct and proximate cause of plaintiff's injury was the car striking the switch and taking the turn upon the straight rail with such speed and force as to cause plaintiff to be thrown from the car, then and in that event, even though plaintiff boarded the car while it was in motion, that fact is in itself immaterial, and should be disregarded by you."

All of this, taken in connection with the statement of the case, seems to me to be intended as cautionary advice. But having said to the jury:

"If you find from the evidence in this case that this car with the plaintiff and other passengers standing upon the platform of it, with the knowledge of the conductor of that fact, was driven along and over this track at such a high rate of speed that when the car struck the switch in said track it was caused to sway or lurch from side to side in such a manner as to cause the plaintiff to lose his balance and be thrown off, then said defendant is guilty of negligence in this case, and plaintiff is entitled to recover for all damages that the evidence shows he sustained by reason of so being thrown, provided you further find from the evidence that plaintiff was in the exercise of due care and caution on his part at the time he was thrown from the car"

—the court further said:

"The mere fact that the plaintiff in this case fell from a car of the defendant and thereby sustained an injury is no reason of itself why the defendant should be compelled to pay damages for the same. The law requires the plaintiff to exercise care and discretion as well as the defendant, and if from the evidence in this case you find that this accident could and would have been avoided by the plaintiff if he had exercised a proper degree of care in boarding the car, then your verdict should be for the defendant, 'No cause of action.'

"One who attempts to board a moving car after it has left a regular stopping place does so at his peril, and if from the evidence in this case you find that this accident was occasioned by the fact that the plaintiff attempted to board the car after it had started,

and by reason of his haste and insecure position he fell or was thrown from the car to ground, then and in that event he cannot recover in this case, and your verdict should be for the defendant, 'No cause of action.'

"In starting the car of the defendant from the regular station stop before the depot at Ypsilanti the duty of the railroad company at that time ended when the conductor saw that those who were on board were not in places of danger, and no duty could be charged against the said defendant by reason of an accident that occurred to one who without notice to the employees of the defendant boarded or attempted to board the car after the same had started. In the operation of cars and trains it is necessary that there should be switches located at the various stations along the right of way, and one using the cars is bound to recognize the fact that some motion and change of motion must be necessary in passing over and upon such switches, and one who makes no effort to guard against such changes of position as might naturally be expected by such method of transportation by taking hold of handrails or otherwise must be responsible for an injury that will come from such negligence, and if the plaintiff in this case by reason of boarding a car in an improper manner or by failing to take proper precaution for his own safety after he had boarded the car, or was thrown therefrom on that account, then he cannot recover in this action, and your verdict should be 'No cause of action.' "

Whether we regard the entire charge or the separate various paragraphs, excepting those relating to the recoverable damages, it is open to the criticism that it does not define the issues, is conflicting and confusing as a whole, lacks precision of statement in its parts, and in an important particular misstates the law. Plaintiff's testimony tended to prove that although he got upon the car while it was in motion he was safely upon it and stood upon the platform. No one disputes him; disclosed circumstances do not dispute him. Of course if he had not boarded the car, was in the act of boarding it when he was thrown or

fell from it, another case, not the case of the plaintiff, would be presented. This, it may be said, was one theory of defendant's case. No testimony supports such a theory, and therefore no such case is presented. If plaintiff had safely boarded the car and was standing with other passengers upon its platform, waiting convenient opportunity to enter the car, what possible difference can it make whether he exercised a *proper* degree of care in boarding it? And what would be a *proper* degree of care? The charge answers this, in a way. The jury was instructed that one attempts, at his peril, to board a moving car, and that if in an attempt to do so plaintiff, by reason of his haste or insecure position, fell or was thrown to the ground, he could not recover. This really affords no light upon the question of what would be a proper degree of care to exercise in boarding a moving car, unless the question is to be answered by the success or failure of the one making the attempt.

What is the meaning of the third paragraph of the portion of the charge last above quoted? If the jury accepted it literally and applied it to the facts, as disclosed by plaintiff's testimony, it amounted to the direction of a verdict for defendant. Plaintiff *boarded* the car without notice to defendant's agents, if he boarded it at all. He ran after it, mounted the steps, and stood upon the platform, with other passengers. This is, although a perilous act, an everyday occurrence. I am referred to no rule of law which requires one in such circumstances to introduce himself, or to be introduced, to the carrier's agent, or to be recognized by the agent, before he can become a passenger. See *Berkebile* v. *Traction Co.*, 255 Pa. 310 (99 Atl. 871)

In the last paragraph above quoted, no mention is made of the usual or unusual speed of the car. Plaintiff, admittedly, did not have hold of a handrail. How

he otherwise guarded his position is told in his testimony. But it is his contention that the car was not operated as such cars usually and safely are operated when leaving a switch for a main line track; that it was moved at a high and dangerous rate of speed, to which operation his injury should be attributed.

For the reasons stated, the judgment must be reversed, and a new trial granted.

Kuhn, C. J., and Stone, Bird, Moore, Steere, Brooke, and Fellows, JJ., concurred.